The First Municipality of the City of New Orleans *v.* The Commissioners of the General Sinking Fund, and others.

The First Municipality has not succeeded to the rights and privileges of the inhabitants of the old city of New Orleans, nor to those of the corporation created by the act of the 17th of February, 1805, and the acts supplementary thereto. It is the creature of the act of the 8th of March, 1836; and to it, and the acts amending it, we must look for its powers, and rights.

The corporation of the city of New Orleans, which existed previously to March, 1836, is in a state of liquidation, and is represented in all things relating to its settlement and rights by the Mayor and the Commissioners of the Sinking Fund. The real property which belonged to it at the time of its dissolution, belongs to the Municipality in which it is situated.

ACTION before the Parish Court of New Orleans, by the First Municipality, against the Commissioners of the General Sinking Fund, and the Second and Third Municipalities of the city of New Orleans. The petition prays that the proceeds of the sale of certain lots, situated between Ursuline, Levée, and Garrison or Barrack streets, and the public road, and between Custom House, Levée, and Bienville streets, and the public road, originally forming a part of the public quays, extending along the front of the city between the first row of houses and the river Mississippi, which by an act of the Legislature of the 11th of March, 1836, were directed to form a part of the general sinking fund of the city, and the interest to be applied to the payment of the debts of the former corporation, may be decreed to belong exclusively to the inhabitants of the city proper, or old city of New Orleans, within the limits which it had from its foundation by the French to the time of the passage of the act entitled an act to incorporate the city of New Orleans (17 Feb., 1805,), and that the petitioners may be declared to be entitled to the interest which has accrued on the same. The

280 NEW ORLEANS,

First Municipality of New Orleans v. The Commissioners of the Sinking Fund, &c.

,petition further prays that the property which before the cession of Louisiana to the United States, belonged to the city of New Orleans, as commons, may also be decreed to be the exclusive property of the petitioners; and that a piece of ground between New Levée, Common, Tchapitoulas, and Canal streets, with the alluvion in front thereof, and another between Tchapitoulas, Common, Magazine, and Canal streets, both of which by the act dividing the city into Municipalities had been arbitrarily given to the Second Municipality; and the proceeds of the sales made by the former corporation of New Orleans of certain lots between Common and Canal streets, and the rents which may have accrued thereon since the division of the city into Municipalities, may in like manner be declared to be the property of the inhabitants of the old city of New Orleans; the two pieces of ground just mentioned, and the lots sold between Common and Canal streets, having formed part of the commons, which prior to and at the treaty of cession, belonged to the city of New Orleans as it then existed.

The defendants severed in their answers, setting up various defences.

The judge of the Parish Court, after recapitulating the facts of the case, pronounced the following judgment:

" After a great deal of argument by the contending parties, and after reflecting maturely on the whole, as well as upon the evidence, I feel satisfied:

" 1. That the grounds either in kind, or represented by their proceeds, which are claimed in this suit from the Second Municipality, were part of the commons given or granted to the city of New Orleans by its founder.

" 2. That the grounds, the proceeds of which are claimed from the sinking fund, were likewise part of the quays and commons thus granted.

" 3. That the former city of New Orleans, as it was originally established, was the exclusive owner and proprietor of all the said commons and quays.

" 4. That after receiving them as grants or gifts, the said city of New Orleans could not be legally deprived thereof, either by the prince who granted them, or by any of the governments which have succeeded to that prince.

"5. That any law by which the city of New Orleans, as originally created, should be deprived, without indemnity, of any of the commons granted to it by its founders, would be in derogation of the constitutional principles that no one can be deprived of his property without a proper indemnification, and that no law ought to be passed impairing the obligation of contracts.

"If therefore the *city of New Orleans*, I mean the city as originally founded under the French crown, and to which the commons and quays in question were given, were the plaintiffs in the present case, I should at once say they must recover those commons or quays; and that any law by which they may have been deprived of them was unconstitutional, and as such null and void.

"But who is it that sets up the claim to be the *old original city of New Orleans?* I am answered by the plaintiffs, ' the First Municipality.' Is it really so?

"What is the First Municipality? It is one of the three corporations, created by the act of March 8th, 1836. It is one of the three parts into which the former corporation of New Orleans, created by the act of 1805, was divided. As a corporation, it has no other rights nor powers than those given to it by the act of March 8th, 1836. It is the creature of the Legislature. It represents only that territory which the Legislature declared it should represent. No where do we find that the First Municipality is substituted to, or intrusted with, the rights of the original city of New Orleans.

"Even in point of extent or territory, the First Municipality is not the same thing as the *original city of New Orleans.* On each side, up and down the river, it has less extent; for on the upper side it extends only to the middle of Canal street, whereas the original city with its commons went as far up as the Jesuits' plantation, now the upper side of Common street; on the lower side it extends only to the middle of Esplanade street, whereas the original city extended with its commons beyond the lower side of Esplanade street, as far down as the neighboring plantations. Again, in the rear, the First Municipality extends to, and includes the settlement of the bayou St. John, whereas the original city of New Orleans, with its commons, did not by far extend so much in the rear.

"Thus it appears that the Second Municipality on the upper side,

282 NEW ORLEANS,

First Municipality of New Orleans *v.* The Commissioners of the Sinking Fund, &c.

and the Third Municipality on the lower side, include, by the act which incorporates them, parts of the original city of New Orleans. The First Municipality, it is true, includes a much more considerable portion of the original city of New Orleans, than either the Second or Third Municipalities, but for all that, I cannot conceive how it can pretend to be the original city itself.

" The present action is, or at least partakes much of the character of a petitory action. In such an action, the plaintiff must succeed upon the strength of his own title, and not on the weakness of his adversary's.

" If the First Municipality cannot, as I conceive, be considered as standing in the shoes of the original city of New Orleans, it cannot, in my opinion, be sustained when it revendicates the grounds, or the proceeds of grounds lying within the Second Municipality, although the same belonged to the original city of New Orleans.

" With regard to the claim of the First Municipality against the Sinking Fund, the question appears to me somewhat different.

" By the act of the 8th of March, 1836, dividing the former corporation of New Orleans into three distinct municipalities, it is provided, sec. 15, ' that all the real property, of whatever kind or description, and the revenues arising therefrom, now vested in the Mayor, Aldermen, and Inhabitants of New Orleans, shall be vested in the respective municipalities in which the same is situated.' The lots of ground, the proceeds of which are claimed by the plaintiffs from the Sinking Fund, are all situated in the First Municipality, therefore, according to the provision just recited, the said lots of ground were vested in the First Municipality. But at the time the law was passed, those lots of ground being the object of a suit between the United States and the corporation of New Orleans, were sold by consent of all parties concerned ; the rights of the parties to be exercised on the proceeds, instead of on the property itself ; in other words, the proceeds representing the property. These proceeds were deposited in court, when by the act of March 11th, 1836, it was provided :

" ' Sec. 1. That in addition to the stock and other funds designated by the fifteenth section of the act to which this is a supplement, (*the act of March 8th*, 1836,) to form a sinking fund for the

payment of the debts of the city, as set forth and described in the said section, the monies arising from the sale of the lots in front of the city proper, comprised between Canal and Esplanade streets, and the front street of the city and the river, and which lots have been sold pending the litigation relative to the title thereto between the United States and the Mayor, Aldermen, and Inhabitants of the city of New Orleans, and which proceeds now remain deposited in the District Court of the United States for the Eastern District of Louisiana, the net amount thereof, deducting all costs and charges, shall, in case of judgment being rendered against the title of the United States thereto, be and form a part of said sinking fund, and *the interest thereof* be applied in the same manner as the other funds of said sinking fund, for the payment of said debt.'

" Since the act last recited, the judgment contemplated has been rendered against the title of the United States, and the moneys arising from the sale of the lots in question have been delivered to the Sinking Fund, and the capital and interests of those moneys are now claimed by the plaintiffs.

" Here the question arises whether that provision of the first section of the act of March 11th, 1836, is constitutional?

" In the first instance, I understand that section as not depriving the First Municipality of the property in the proceeds of the lots in question, but merely as disposing of the interest to be yielded by the said proceeds until the debts of the old corporation of New Orleans are settled and paid.

" It is always a delicate task for any court, and especially for a court of original jurisdiction, to decide upon the constitutionality of a law. No judge, I consider, ought to lose sight of those wise principles laid down by the Supreme Court of the United States, a tribunal which from its institution we ought especially to look to, in questions of constitutional law, that the presumption must always be in favor of the validity of the laws, if the contrary is not clearly established ; and that in order to declare a law unconstitutional, the opposition between the constitution and the law must be clear and plain, or to use the emphatic words of the great judge who so long presided over that court (Judge Marshall), 'the opposition between the constitution and the law should be such, that the judge feels a clear and strong conviction of their incompatibility with each other.'

" Upon these wise principles, I would not feel myself authorized to declare the legal provision above quoted unconstitutional.

" The Legislature, when dividing the old corporation of New Orleans into three municipalities, were in duty bound to secure to the creditors of the former the payment of their debts, for which the three municipalities were bound, and probably bound *in solido.* By the act of division, (act of March 8th, 1836,) the Sinking Fund was created, for the purpose of settling the concerns of the old corporation. That Sinking Fund was to consist of a certain amount to be paid yearly, and in a fixed proportion by each of the municipalities, of the bank and other stocks belonging to the corporation at the date of the law, of all moneys, notes, credits, and accounts in the possession of the corporation at the same date, and of the portion of paving due by individuals to the corporation. To these means, as we have seen before, the act of March 11th, 1836, added the interest of the proceeds of the lots decreed to belong to the corporation.

" At the time that the act just mentioned was passed it was by many considered as favorable to the First Municipality, inasmuch as it put at rest any supposed claim that the state might have to the lots, or the proceeds in question. Whether the act was passed with this intention or not, it is immaterial to enquire in this case; but we may, on reflecting upon the state of things at the time of the division of the city into three municipalities, conceive the motives which actuated the Legislature in applying the interest in question to the payment of the debts of the former corporation. Had the suit between the United States and the corporation, as might have been the case, been decided before the passage of the acts of March 8th and 11th, 1836, the proceeds of the lots would have been paid into the treasury of the corporation, and probably have been applied to the payment of *its debts;* in which case it will not be said, that the First Municipality would have had a claim for the amount after the division. Besides, the Legislature may well have considered that as the First Municipality was, by the act of division, recognized as the sole owners of the town-house, the city jail, the market, and other places established, and paid for by the former corporation with the common funds, whilst the other municipalities did not receive equivalents, it was a good reason to require

from the First Municipality an additional contribution towards the fund destined to pay the debts of the old corporation, and have designated the interests above mentioned as such additional contribution.

" Such a provision, I am not prepared to consider as unconstitutional, or exceeding the powers of the Legislature.

" Entertaining the opinion just expressed, I cannot say that the plaintiffs must succeed in their demand against the Sinking Fund, which includes the capital and interests of the proceeds of the lots in question. They cannot now recover the capital, because the debts of-the corporation are not shown to have been paid. They cannot recover the interest, because that interest is to go to the payment of those debts.

" But whilst denying the right on the part of the First Municipality to recover *in this action*, and at the present time, the capital of these proceeds, having acknowledged their right to claim them hereafter, and thinking that as owners of that capital, they have an interest and a right to protect and preserve it, this court is bound to reserve to them that right.

" It is therefore ordered that the plaintiffs' demand against the several defendants be dismissed with costs, reserving, however, to the said plaintiffs, all their rights to recover, in due time, the capital of the proceeds of the lots, awarded to the city of New Orleans, in the suit of the United States against the said city, and in the meantime to recur to all legal means and measures to preserve said capital, and prevent its being alienated, or spent by the Sinking Fund."

The plaintiffs appealed.

*Mazureau*, for the appellants.

*Canon*, for the Commissioners of the Sinking Fund, and the Third Municipality.

*Rawle*, *Grymes*, and *C. M. Conrad*, for the Second Municipality.

GARLAND, J. The plaintiffs allege that at the foundation of the city of New Orleans, by the King of France, certain spaces of ground were left vacant in front of said city, from its upper to its lower limits, for the use of the inhabitants, under the name of *quays*, which as such, had always been used and possessed as a common property

previous to the cession of Louisiana to the United States, and
since.   That in the year 1825, the inhabitants, under the adminis-
tration of a corporation known by the . name of the Mayor,
Aldermen, and Inhabitants of the city of New Orleans, were in
possession of the said *quays*, when a resolution was passed for the
purpose of selling in lots, parts of said *quays*, which were in-
cluded between Ursuline, Levée, and Barrack streets, and the
public road, and also between Custom House, Levée, and Bienville
streets, and the public road.   That the United States instituted
proceedings against the said corporation to prevent said sale,
claiming the said spaces of ground as a portion of the public do-
main, acquired by the treaty of cession; which claim, the corpo-
ration resisted, and asserted the claims of the aforesaid inhabitants
to said pieces of land, as a common property.   That during the
pendency of said suit, the parties entered into an agreement to sell
the property at public auction, the proceeds to remain deposited in
court, subject to the final decision of the case; in conformity with
which agreement, the said pieces of ground were sold in lots, and
the net proceeds amounted to $954,797 76, and afterwards, the
said suit, as it is alleged, was decided in favor of the *present pe-
titioners*, and the property declared to belong to them.

The petition further represents, that subsequent to said judgment
and final decree, the proceeds of the sale being still deposited in
the District Court of the United States, an act was passed by the
Legislature of this state, on the 8th of March, 1836, by which the
city of New Orleans was divided into three separate Municipalities,
the first of which, now plaintiffs, is composed of the city of New
Orleans proper, within the limits, above and below, that it had at the
time it was first established, with the exception of certain parts of
its commons on the upper side.   That by the 15th section of said
act, a Sinking Fund was created, for the purpose of paying the
debts of the former corporation, which was placed under the con-
trol of certain Commissioners, and that by a subsequent act
approved March 11th, 1836, supplementary to the foregoing, the
moneys arising from the sale aforesaid were made to form a part of
said fund, and the interest thereof directed to be applied in the
same manner as other money and property composing said fund,
to the payment of the debts of the former corporation.

It is alleged, that by virtue of the aforesaid provisions, the Commissioners of the Sinking Fund have taken possession of the proceeds of the aforesaid sale, to the amount of $954,797 76, to the great detriment and prejudice of the inhabitants of the First Municipality, to whom the said sum belongs, and from whom it is detained unjustly, and by an arbitrary use or abuse of power, there being no more right to take the proceeds than to take the land itself, if it had not been sold; and that the said Commissioners of the Sinking Fund, and the Second and Third Municipalities claim to hold said proceeds or sum of money, for the objects specified in the aforesaid acts of the Legislature, and refuse to deliver or pay over the same to the plaintiffs, who aver a constant willingness and ability to provide for their just portion of the debts of the former corporation. It is therefore prayed that the Commissioners aforesaid, and the Second and Third Municipalities be cited; that it be ordered and decreed that the proceeds of the sale of the aforesaid lots, 'be considered as belonging exclusively to the inhabitants of the city proper, to wit, the old city of New Orleans, within the limits which it had from the moment of its foundation by the French, above as well as below, to the time when the act entitled an act to incorporate the city of New Orleans was passed, and that as such, the said proceeds be accounted for, capital and interest, and the whole delivered over to your petitioners.'

The petition then proceeds to ask that the property which, previous to the cession of Louisiana, belonged 'to the then city of New Orleans, as commons, may also be decreed to be the exclusive property of the inhabitants thereof.' It then proceeds to allege, that in creating the three municipalities, a portion of the commons belonging to the old city was arbitrarily included in the Second Municipality, and prays that a piece of ground bounded by Canal, Magazine, Common and Tchapitoulas streets, and another piece, bounded by Common, New Levée, Canal and Tchapitoulas streets, may be decreed to be the property of the inhabitants of the *old city of New Orleans;* and that if the said pieces of ground have been sold, that the proceeds be paid to the First Municipality; and that it be adjudged to have the full, free, and exclusive right of enjoying and disposing of the same; and

288                      NEW ORLEANS,

First Municipality of New Orleans v. The Commissioners of the Sinking Fund, &c.

that said Municipality be put in possession, any act of the Legis-
lature to the contrary notwithstanding.

The Commissioners of the Sinking Fund, after pleading several
dilatory exceptions which were overruled, answered by denying
the capacity of the plaintiffs to sue in the manner and form set
forth.   They deny generally the allegations in the petition; they
further say, that in consequence of payments made by them, out
of the funds received, only a small balance is in their hands, and
that the whole fund will be exhausted when the debts of the former
corporation are paid.

The Second Municipality, in its answer, denies generally the
allegations of the petition, and then proceeds to admit that the
pieces of ground mentioned, formerly belonged to the city of New
Orleans, and were sold, and the proceeds deposited as before
stated.   They further admit the division of the former incor-
porated limits of the city of New Orleans into three municipalities,
the alterations and amendments made to the charter by the acts
of the Legislature, passed in March, 1836, the creation of a Sink-
ing Fund for extinguishing the debts of the former corporation,
and that the Commissioners of said fund have received the pro-
ceeds of the lots sold, amounting to $954,797 76, for the purposes
mentioned in the aforesaid acts of the Legislature, and that they
hold the same to be administered under the said acts.   It is further
admitted by the Second Municipality, that by the aforesaid acts of
the Legislature, the real estate which belonged to the former cor-
poration was divided between the three municipalities, by assign-
ing and giving to each, the portion situated within their respective
limits, whereby the pieces of ground now claimed, situated within
their limits, are their exclusive property.   It is further averred, that
said acts were a just and proper exercise of Legislative authority,
for the purpose of providing for the payment of the debts of the
old corporation, and making a distribution of the property.

The Third Municipality denies the right of the plaintiffs to sue,
or recover on the allegations contained in the petition, and pleads
a general denial.

On the trial, the plaintiffs offered in evidence, a copy of the
original plan of the city of New Orleans, made by De Pauger,
representing its squares, streets, quays, and commons, in the year

JANUARY, 1842.                    289

First Municipality of New Orleans *v.* The Commissioners of the Sinking Fund, &c.

1724, which shows that the lowest squares were those between Hospital and Barrack streets, and the uppermost, those between Bienville and Custom House streets; the latter street is not represented at all, nor were any lots laid out above it, nor any back of Rampart street. The partition of the plantation of the Jesuits was also shown, to prove that the commons of the city extended to their lower boundary; also the records of the suits with the United States, showing the judgments of the Supreme and Circuit Courts of the United States, in relation to the property, its sale under different orders of court, and the payment of the proceeds, first by the clerk of the District Court of the United States, to the treasurer of the old corporation, and then by him to the comptroller of the Sinking Fund.

Upon a full examination of the case, the parish judge dismissed the action, reserving to the Municipality all their rights to recover in due time from the Sinking Fund, the proceeds of the lots awarded to the city of New Orleans by the judgment rendered in the Supreme Court of the United States, in the suit between the city and the United States; also reserving to said Municipality all legal means to preserve the amount, and to prevent its being improperly alienated or spent by the Commissioners of the Sinking Fund. From this judgment the plaintiffs have appealed.

In the argument of this case by the counsel for the plaintiffs, we had many authorities exhibited to show what were the rights and privileges of the inhabitants of towns and cities in France and Spain, and their colonies; and it was contended throughout that the quays and commons belonged to them, and consequently, that the inhabitants of the *old city of New Orleans* had an exclusive property in those in front of and around it. What may have been the rights of the inhabitants of the city of New Orleans under the French and Spanish governments, it is not now necessary to inquire. The radical error in this case consists, as is well stated by the parish judge, in the First Municipality supposing itself invested with the rights of those inhabitants, or that it has succeeded to the powers, rights, and privileges of the corporation created by the act of the 17th of February, 1805, and the various acts supplementary and amendatory thereof. This Municipality is the creature of the act of March the 8th, 1836; to it we must look for

its powers, rights, and authority; and it is a great mistake to suppose, because we may sometimes have to look into previous acts of the Legislature, to which the act of 1836 may refer, to ascertain its powers, that it is the residuary legatee and depositary of the powers and rights of the corporation that existed previous to March, 1836, and which, for some purposes, and in a somewhat different form still exists. That corporation is now in a state of liquidation, and as we have held in 13 La. 344, and 15 La. 128, is represented by the Mayor and Commissioners of the Sinking Fund, in all things appertaining to its settlement and rights; whilst the real property which belonged to it at the time of its division into Municipalities, belongs to the Municipality in which it is situated. 1 Bullard & Curry's Dig. 123. Nos. 108, 109. Ib. 125. No. 119. Each Municipality represents and acts, within and for the territorial limits fixed by the Legislature; but we no where find that the First is substituted for, or entrusted with the rights of the original city or former corporation.

The parish judge was correct in considering this as in some degree a petitory action, in which the plaintiff must recover upon the strength of his own title, and not by the weakness of his adversary's. As against the Second Municipality the action is essentially petitory; the judge therefore properly concludes, as the plaintiff does not stand in the place of the original city of New Orleans, that no action can be maintained by it against that defendant for the land claimed, or for the proceeds, it being situated in that Municipality, and in fact belonging to it under the act of the Legislature of March 8, 1836.

Another material error into which the counsel for the plaintiffs has fallen, is in supposing that the First Municipality is vested with the title which the inhabitants of the original city had to the lands in question, or to their proceeds, admitting (which we are not ready to do,) that they had a title such as is set up. Suppose that these inhabitants could themselves recover, the benefit would not accrue to the plaintiffs by virtue of their corporate powers, but be for themselves; and let us suppose further, that the Municipality could recover, the judgment would enure to the benefit of all within its limits, and they are now much more extensive in one direction, and more contracted in another, than the original limits

were, according to the allegations in the petition, so that all in whom the title was, or is, could not be benefited, and many in whom it is not, would profit by it.

Against the Third Municipality, the plaintiffs present no claim except so far as it is interested in the Sinking Fund, which brings us to a brief consideration of the demand on it.

. The plaintiff's counsel complains loudly of the injustice and oppression practised by the Legislature, in directing the proceeds of the lots sold under the orders of the District Court of the United States, to be paid over to the Commissioners of the Sinking Fund, and the interest to be applied in the same manner as the other money in said fund, to the payment of the debts of the city or old corporation.   Whether the different Municipalities have contributed to that fund in an equal ratio, is not in evidence; but the Legislature in creating these new municipal corporations had a right to dictate the terms on which they should exist, if they did not violate section 23 of the 6th article of the constitution.   But for the acts of the 8th and 11th of March, 1836, it would be a serious question whether the old corporation had any right to the proceeds of the lots in question, or to any of the land or squares in controversy; and it may be further questioned whether the state has done more by the 1st section of the act of March 11, 1836, (1 Bullard & Curry's Dig. 129, No. 132,) than to grant the use of the moneys, arising from the sale of the lots mentioned, to the Sinking Fund, for the purpose of producing an interest to be applied to the payment of the debts of the city.

The Supreme Court of the United States, in the case in 10 Peters, 737, abstains from deciding any thing as to the rights of the state and the city to the pieces of ground in controversy.   They say the United States have no claim to it; but they do not decide who has.   The judgment of the District Court was only reversed, and no confirmation of the claim of the corporation is contained in the judgment; so that the rights of the state may not be precluded, unless the two acts of March, 1836, have ceded them.

As it is probable that the First Municipality has an interest in the portion of the Sinking Fund under consideration, we see no serious objection to reserving to them the rights allowed by the court below, but we concur with the learned judge that this suit

cannot now be maintained against the Commissioners to recover the sum claimed,

*Judgment affirmed.*